UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JASWINDER SANDHU,

       Plaintiff,                                   MEMORANDUM AND ORDER

     - against -                              12 CV 2699 (ILG)

UNITED STATES OF AMERICA, et al.,

       Defendants.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff Jaswinder Sandhu ("plaintiff") brings this action to obtain judicial review of the denial of his application for adjustment of status by the United States Citizenship and Immigration Services ("USCIS"), and to obtain an order that his application be approved.  Currently before the Court is the government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment.  For the reasons set forth below, the government's motion is hereby GRANTED.

## I.  BACKGROUND

       Plaintiff came to the United States from India on September 28, 1996 on a visitor's visa that was valid through March 27, 1997.  Administrative Record ("R.") at 268 (Dkt. Nos. 9-3 to -5).[1]  Plaintiff overstayed his visa and, on October 22, 1997, married Rowena Jones ("Jones"), a United States citizen, in Queens County, New York.

---

[1] "In resolving the question of jurisdiction, the court can refer to evidence outside the pleadings."  Bentley v. Wellpoint Cos., Inc., No. 11 Civ. 8963(CM), 2012 WL 546991, at *2 (S.D.N.Y. Feb. 17, 2012) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)).  "The consideration of materials extrinsic to the pleadings does not convert the Rule 12(b)(1) motion into one for summary judgment."  Bentley, 2012 WL 546991, at *2 (edits and quotation omitted).

1

R. at 80-81. The very next day plaintiff filed a Form I-485 to adjust his immigration status to lawful permanent resident. R. at 223-26. On November 15, 1997, Jones filed a Form I-130 Petition for Alien Relative on behalf of plaintiff. R. at 227-29. On August 13, 2001, Jones obtained a Judgment of Annulment of her marriage to plaintiff from the New York Supreme Court, Queens County because "the consent . . . to the marriage was obtained by fraud." R. at 82-83.

On March 8, 2002, the Immigration and Naturalization Service ("INS")[2] sent plaintiff a notice requesting his appearance at its office in Garden City, New York on April 11, 2002. After plaintiff failed to appear, INS denied his Forms I-485 and I-130 without prejudice on April 15, 2002. R. at 40-41, 43.

On January 5, 2007, S.J.K. Restaurant Corporation filed a Form I-140 Immigration Petition for Alien Worker on behalf of plaintiff,[3] which USCIS approved on June 8, 2007. R. at 162-65.[4] On July 27, 2007, plaintiff filed a second Form I-485 based on the approved Form I-140. R. 112A-17. Although plaintiff both overstayed his visitor visa and remained in the country after his first I-485 application was denied, his second Form I-485 was viable if, and only if, his first I-485 was viable when filed. R. 88.

---

[2] "Pursuant to the Homeland Security Act of 2002, the INS was abolished and its functions reassigned to subdivisions of the Department of Homeland Security-the Bureau of Immigration and Customs Enforcement ('ICE') and the Bureau of United States Citizenship and Immigration Services ('USCIS')." Miller v. Mukasey, 539 F.3d 159, 161 n.1 (2d Cir. 2008) (citations and quotations omitted).

[3] "Labor certification is a prerequisite to an employment-based visa, for which an employer must file an I-140 petition." Rajah v. Mukasey, 554 F.3d 449, 452 n.5 (2d Cir. 2008).

[4] The parties submit no evidence concerning plaintiff's activities from 2002 through 2007.

Since plaintiff's first I-485 application was based on his marriage, his second I-485 was only viable if the marriage was bona fide. Accordingly, on December 30, 2010, USCIS sent plaintiff a notice requesting "joint documents showing you shared a bona fide marital relationship with your spouse." R. 131. In response, plaintiff submitted a copy of a joint lease agreement and notarized affidavits from his landlord, former spouse, and friends. R. 85, 123-30. USCIS denied plaintiff's second Form I-485 on March 14, 2011, concluding that:

> The documentation submitted by the couple is insufficient to outweigh the fact that they failed to appear for an interview, and alone does not persuade the Service of the existence of a bona fide marriage. Specifically, the documentation is insufficient because there was no original lease agreement submitted and no way of verifying who executed the agreement or when it was executed. The affidavits submitted do not constitute evidence that the two of you intended to share a life together when you participated in the marriage ceremony.

R. at 100-03.

Plaintiff moved to reopen and reconsider his Form I-485 application on April 8, 2011. R. 94-99. On November 23, 2011, USCIS reconsidered plaintiff's application and again denied it. In its second denial, USCIS listed the same reasons as in its first denial, and added that Jones' affidavit, which stated that "we both had the intent of establishing a life together," was "inconsistent with the grounds on which she was granted the annulment." R. at 85-89.[5]

---

[5] The Judgment of Annulment states "that the marriage between the Plaintiff, Rowena Jones, and the Defendant, Sandhu Jaswinder, is hereby annulled by reason of: the consent of the Plaintiff to the marriage was obtain [sic] by fraud." R. 82-83. Under New York law, "[a]n action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by fraud may be maintained by the party whose consent was so obtained." N.Y. Dom. Rel. § 140(e) (McKinney 2012).

3

Plaintiff initiated this action on May 30, 2012, seeking judicial review of the denial of his I-485 application, and an order that his application be approved. Complaint ("Compl.") ¶ 3 (Dkt. No. 1). On July 16, 2012, the Department of Homeland Security commenced a removal proceeding against plaintiff. R. 56-57. On September 25, 2012, the government moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for summary judgment pursuant to Rule 56(a). Dkt. No. 9. The government argues that the Court lacks subject matter jurisdiction or, in the alternative, that the Court should affirm USCIS's decision under the Administrative Procedure Act. Defendants' Memorandum of Law in Support of Motion dated September 25, 2012 ("Gov't's Mem."), at 1 (Dkt. No. 9-2). On November 6, 2012, plaintiff filed his opposition to the government's motion, Plaintiff's Opposition to Defendant's FRCP 12(b)(1) Motion to Dismiss ("Pl.'s Opp'n") (Dkt. No. 10), and on November 15, 2012, the government filed its reply. Defendants' Reply Memorandum of Law in Further Support of Motion ("Gov't's Reply") (Dkt. No. 11).

## II. DISCUSSION

### A. Legal Standards

On a "defendant's Rule 12(b)(1) motion to dismiss, . . . [t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Tranp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Id. (internal quotation omitted).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, which stripped federal courts of jurisdiction to review discretionary

4

immigration rulings; in 2005, Congress amended the law to permit limited judicial review.  See Rosario v. Holder, 67 F.3d 58, 61 (2d Cir. 2010).  As the law currently stands, 8 U.S.C. § 1252(a)(2), entitled "[m]atters not subject to judicial review," states that:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] of this title.

8 U.S.C. §§ 1252(a)(2)(B)(i).  A subsection entitled "[j]udicial review of certain legal claims" provides that no provision "which limits or eliminates judicial review[] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252(a)(2)(D).

In general, "8 U.S.C. § 1252(a)(2)(B)(i) eliminates district court jurisdiction to review the denial of an I-485 application" under § 1255.  Ruiz v. Mukasey, 552 F.3d 269, 276 n.4 (2d Cir. 2009).  However, there are two exceptions, one statutory and the other judicial.  First, under § 1252(a)(2)(D), "this jurisdictional bar would not apply to petitions raising constitutional claims or questions of law."  Id. (quotation omitted).  Second, courts have limited the scope of § 1252(a)(2)(B)(i) in that it "does not bar judicial review of nondiscretionary, or purely legal, decisions."  Sepulveda v. Gonzales, 407 F.3d 59, 63 (2d Cir. 2005).  Therefore, courts lack jurisdiction to review USCIS's "factfinding, factor-balancing, and exercise of discretion" under § 1252(a)(2)(B), Rosario, 627 F.3d at 61, but retain jurisdiction "to review nondiscretionary decisions regarding an alien's eligibility for . . . relief."  Sepulveda, 407 F.3d at 62-63. Mixed questions of law and fact are reviewable where, inter alia, the "underlying factual

5

determination is flawed by an error of law." Rosario, 627 F.3d at 62 (citations omitted). "The mere use of the term 'erroneous application' of a statute will not, however, convert a quarrel over an exercise of discretion into a question of law." Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 331 (2d Cir. 2006).

### B. Subject Matter Jurisdiction

The government argues that "this action is barred by 8 U.S.C. § 1252(a)(2)(B)(i)" because plaintiff claims "that an immigration adjudicator improperly weighed evidence in denying an application for adjustment of status." Gov't's Mem. at 9. Plaintiff responds that this action is not jurisdictionally barred because it presents a mixed question of law and fact. He claims that he "does not allege solely that the immigration adjudicator improperly weighed the totality of the evidence in this matter, but also and namely that the adjudicator improperly interpreted the legal meaning and implications of a marriage annulment." Pl.'s Opp'n at 2.

Plaintiff's claim must rest on the judicial exception to § 1252(a)(2)(B)(i), because the statutory exception of § 1252(a)(2)(D) is inapplicable to district courts. See Kim v. Gonzales, No. Civ.CCB-05-485, 2006 WL 581259, at *4 (D. Md. Mar. 7, 2006) ("It is clear, however, that by its express terms, § 1252(a)(2)(D) only provides such jurisdiction to courts of appeals and not to district courts."); see also Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008) (holding that district courts lack jurisdiction to review constitutional challenges to removal proceedings because § 1252(a)(2)(D) vests jurisdiction "exclusively in the courts of appeals").

Plaintiff supports his argument by analogizing to Sepulveda v. Gonzales. In Sepulveda, immigration authorities found that the alien "was unable to establish good moral character as matter of law" due to criminal convictions, and, therefore, was

6

statutorily ineligible for adjustment of status. 407 F.3d at 63-64. The court held that a determination of statutory ineligibility was a nondiscretionary legal determination, not a discretionary factual determination, so judicial review was not barred by § 1252(a)(2)(B)(i). Id. Plaintiff suggests that USCIS's determination that he did not enter into a bona fide marriage, which made him ineligible for adjustment of status due to failure to maintain continuous lawful status, is reviewable under § 1252(a)(2)(B)(i) because it is similar to the finding of lack of good moral character in Sepulveda. Compl. ¶ 22. He further argues that USCIS's reliance on the marriage annulment is itself a reviewable legal determination, because "an annulment based upon fraud can mean many things." Pl.'s Opp'n at 2-4.[6]

      Plaintiff's argument is misplaced. The Second Circuit has explicitly held that USCIS's "determination that [an alien] entered into a marriage for immigration purposes" is "factual." Arenas-Garcia v. Mukasey, 254 Fed. App'x 105, 106, 2007 WL 4105718, at *1 (2d Cir. 2007). Moreover, this case is unlike Sepulveda because USCIS did not simply find plaintiff statutorily ineligible for adjustment based on the annulment. Rather, USCIS weighed the totality of the evidence, including plaintiff's failure to appear for an interview, the authenticity of the lease, and the credibility of the affiants; USCIS only mentioned the marriage annulment to cast doubt on the credibility of Jones' affidavit. Therefore, plaintiff attempts to use "the rhetoric of . . . law to disguise what is essentially a quarrel about fact-finding or the exercise of discretion." Barco-Sandoval v. Gonzales, 516 F.3d 35, 39 (2d Cir. 2008). Because USCIS made a

---

      [6] To support this argument, plaintiff relies heavily on United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002). Pl.'s Opp'n at 3-4. Orellana-Blanco is a post-conviction ruling discussing criminal marriage fraud that is irrelevant to the issue of whether the Court has jurisdiction under § 1252(a)(2)(B)(i).

7

discretionary decision, plaintiff's claims must be dismissed for lack of subject matter jurisdiction under § 1252(a)(2)(B)(i). See Wallace v. Gonzales, 463 F.3d 135, 139-40 (2d Cir. 2006) (citing cases).[7]

### III.   CONCLUSION

For all of the foregoing reasons, the government's motion to dismiss the complaint is hereby GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         January 8, 2013

                                          /s/ ILG
                                          I. Leo Glasser
                                          Senior United States District Judge

---

[7] Even if the Court had subject matter jurisdiction, the Court would find that plaintiff's claims lack merit. Plaintiff, while arguing at some length what an annulment does not mean, fails to discuss what it does mean. "An annulment establishes that the marital status never existed. So annulment and dissolution of marriage (or divorce) are fundamentally different: an annulment renders a marriage void from the beginning, while dissolution of marriage terminates the marriage as of the date of the judgment of dissolution." Black's Law Dictionary 99-100 (8th ed. 2004). Under New York law, "[a] marriage procured by fraud is voidable, . . . so[] annulment when decreed[] puts an end to it from the beginning. It is not dissolved as upon divorce. It is effaced as if it had never been." Campbell v. Thomas, 897 N.Y.S.2d 460, 466 (2d Dep't 2010) (quoting Sleicher v. Sleicher, 167 N.E. 501, 502 (N.Y. 1929)). Since plaintiff's marriage was annulled, it was void at the time he filed his first I-485 petition based on his marriage. Therefore, plaintiff was not eligible for adjustment of status to a lawful permanent resident. See McCreath v. Holder, 573 F.3d 38, 41-42 (1st Cir. 2009) (upholding finding that "the annulment of the first marriage rendered that marriage void ab initio, and so it was insufficient to support a petition for adjustment of status").

8